IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: MANLEY TOYS LIMITED,<br><br>    Debtor in a Foreign Proceeding.<br>------------------------------<br>TOY QUEST LTD.,<br><br>    Appellant / Cross-Appellee,<br><br>        v.<br><br>ASI, INC.,<br><br>    Appellee / Cross-Appellant. | Civ. Nos. 18-2923, 18-11465 (RMB)<br><br>**OPINION** |

APPEARANCES:

WASSERMAN, JURISTA & STOLZ
By: Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920

    and

NOVACK AND MACEY LLP
By: Monte L. Mann, Esq.
100 North Riverside Plaza
Chicago, Illinois 60606
        *Counsel for Appellant / Cross-Appellee*

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
By: Richard B. Honig, Esq.
    Matthew E. Moloshok, Esq.
One Gateway Center
Newark, New Jersey 07102

    and

1

WEISBROD MATTEIS & COPLEY PLLC
By:  Stephen A. Weisbrod, Esq.
1200 New Hampshire Avenue NW
Suite 600
Washington, DC 20036
        *Counsel for Appellee / Cross-Appellant*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Presently before the Court are the cross-appeals of ASI, Inc. ("Aviva"), a pre-petition judgment creditor of the Debtor, Manley Toys Limited ("Manley Toys")[1], and Toy Quest Ltd. ("Toy Quest"), which Aviva contends-- over Toy Quest's vigorous objections-- is an alter ego and / or a trade name of the Debtor. On February 14, 2018 the Bankruptcy Court granted Aviva's Motion for Sanctions upon a finding that Toy Quest had violated the stay imposed by the Bankruptcy Court shortly after the filing of the Debtor's Chapter 15 petition in March 2016[2], and granted Aviva leave to file an additional submission seeking reasonable attorney's fees (hereafter "the Sanctions Order").  On June 21,

---

[1] As stated by this Court in a previous opinion, in 2013, an $8.58 million judgment was entered against Manley Toys in favor of Aviva in Minnesota Federal District Court. In re Manley Toys Ltd., 597 B.R. 578, 581 (D.N.J. 2019).

[2] As explained by this Court in a previous opinion, "[i]n contrast to a Chapter 11 proceeding for example, a stay upon the filing of a Chapter 15 petition is not automatic.  If a provisional stay is warranted, the Bankruptcy Court must enter an order imposing a stay during the time between the Chapter 15 petition and a decision whether to recognize the foreign proceeding." In re Manley Toys Ltd., 2019 WL 1987052 at *1 (D.N.J. May 6, 2019).  The Bankruptcy Court entered such an order (hereafter "the Stay Order") in this case.

2

2018, the Bankruptcy Court granted in part, and denied in part, the fee petition, awarding Aviva $25,651.00 of its $282,966.49 fee request (hereafter "the Fee Order").

For the reasons stated herein, the Court affirms both the Sanctions Order and the Fee Order.

I. **BACKGROUND**

A. <u>**The Garnishment Action**</u>

In 2015, before Manley Toys filed its Chapter 15 petition, Aviva registered its judgment against Manley Toys in the United States District Court for the Middle District of Tennessee. Then, seeking to collect on the judgment, Aviva filed an application for writ of execution asserting that "Manley does business in the United States under the trade name Toy Quest Ltd." and, additionally, "[t]here is also an entity in Hong Kong called Toy Quest Ltd., with the same address as Manley, the same owners as Manley, the same directors as Manley, and that acts through the same employees with 'manley.com' email addresses, and uses the same website as Manley." [Bankr. Docket 16-15374, Doc. 235-2] Based on these allegations, Aviva sought to recover, through garnishment, $97,654.31 which Dollar General stated it owed to Toy Quest. To that end, Aviva filed a formal Motion for Judgment and Execution. Dollar General deposited the funds with the Court, and those funds remained in the Tennessee District Court's registry awaiting a ruling as to the funds' rightful

recipient at the time Manley Toys filed its Chapter 15 petition in March 2016. Toy Quest had filed a Motion to Intervene in the garnishment action, but the Court had not ruled on the motion by the petition date.

In late December 2016, after the petition date, the Tennessee District Court granted Toy Quest's Motion to Intervene. Shortly thereafter, Toy Quest filed a lengthy opposition to Aviva's Motion for Judgment and Execution. The opposition asserted that Toy Quest is neither a trade name of Manley Toys, nor an alter ego of Manley Toys, and therefore Aviva-- which holds a judgment against Manley Toys only-- was not entitled to the Dollar General funds. [M.D. Tenn. Docket 3:15-mc-00015, Doc. 54] Rather, Toy Quest asserted that the funds belonged to it (not the Debtor, Manely Toys, nor Aviva) as Dollar General's documents reflected. [Id.] It is the filing of this opposition by Toy Quest, in which Toy Quest asserted the right to the funds, which the Bankruptcy Court held violated the Stay Order.

**B. Proceedings in New Jersey Bankruptcy Court**

As stated above, Manley Toys filed its Chapter 15 case and motion on March 22, 2016. On April 1, 2016 the Bankruptcy Court entered the Stay Order which incorporated the automatic stay provisions of 11 U.S.C. § 326.

On September 13, 2016-- before the Tennessee District Court ruled on Toy Quest's Motion to Intervene-- Aviva sought relief

4

from the Stay Order, so as to pursue, among other things, "alter ego, fraudulent transfer, or other claims against Toy Quest Ltd. or other nondebtor affiliates or agents of Manley and Toy Quest Ltd." [Bankr. Docket 16-15374, Doc. 144-1] On October 25, 2016-- also before the Tennessee District Court ruled on the Motion to Intervene-- the Bankruptcy Court, addressing Aviva's Motion for Stay Relief, modified the Stay Order to state, in relevant part,

> 2. The provisional stay entered by this Court on March 24, 2016 and set forth in the Court's April 1, 2016 Order Granting Provisional Relief and Setting Date for Further Hearing (the "Provisional Stay") does not apply to any actions taken with respect to persons or entities other than Debtor Manley Toys Limited ("Manley"), <u>except that</u>, as set forth below, the Court reserves <u>judgment</u> on whether the assertion of non-independent claims such as alter ego or fraudulent transfer claims against such persons or entities is subject to the Provisional Stay, and, if so, whether cause exists to lift the Provisional Stay as to such claims.
>
> * * *
>
> 10. The Court reserves judgment on all relief requested in Aviva's Motion for Relief from Provisional Stay not specifically addressed herein, including: . . .
>
>     f. Whether Aviva . . . may assert non-independent claims, including but not limited to <u>fraudulent transfer</u>, unjust enrichment, conversion, and money had and received claims, in any appropriate forum <u>against Toy Quest Ltd., and/or other affiliates or agents of Manley, Manley Toy Direct, or Toy Quest Ltd.</u>

[Bankr. Docket 16-15374, Doc. 159] (emphasis added).

After Toy Quest filed its opposition in the garnishment action, Aviva filed the Motion for Sanctions asserting that Toy Quest had willfully violated the Stay Order as modified. The

5

Bankruptcy Court granted the motion. Importantly, in the Opinion granting Aviva's Sanctions Motion, the Bankruptcy Court specifically stated, "[t]he Court cautions that only those fees reasonably necessary to establishing the elements of this Motion will be awarded." In re Manley Toys Ltd., 2018 WL 1033426, at *8 (Bankr. D.N.J. Feb. 14, 2018). Aviva, however, apparently did not heed the Court's warning; it subsequently filed a fee application seeking an extraordinary amount-- $282,966.49-- in fees and costs incurred in connection with the sanctions motion. The Bankruptcy Court found Aviva's Fee Application "wholly unreasonable, and shock[ing to] the Court," explaining,

> [t]he Fee Application requests $282,966.49 for 518 hours of work on the Sanctions Motion. The Court finds this beyond all reason. Not only is the Fee Application far beyond any comparable amount of fees granted in cases of similar complexity, but considering only proportionality, there is nothing reasonable about this. Aviva has requested attorney fees that are nearly three-times the amount in controversy; and the Court notes that these fees relate exclusively to the Sanctions Motion, they do not include the fees Aviva is claiming it expended on actually litigating the merits of the Garnishment Action as a whole. The Court shudders at the amount of money Aviva's Counsel claims to have expended in an effort to retrieve $97,654.31 for its client.

In re Manley Toys Ltd., 2018 WL 3213710 at *6-7 (Bankr. D.N.J. June 21, 2018).

## II. LEGAL STANDARD

This Court has jurisdiction to hear appeals from the Bankruptcy Court's final orders pursuant to 28 U.S.C. § 158(a).

6

The Bankruptcy Court's legal determinations are reviewed *de novo*; its factual findings are reviewed for clear error. In re Titus, 916 F.3d 293, 299-300 (3d Cir. 2019). The Bankruptcy Court's fee award is reviewed for abuse of discretion. Krueger Assocs., Inc. v. Am. Dist. Telegraph Co. of Penn., 247 F.3d 61, 69 (3d Cir. 2001).

**III. ANALYSIS**

The Court first addresses Toy Quest's appeal of the Sanctions Order and then addresses Aviva's appeal of the Fee Order.

**A.**

Section 362(k)(1) of the Bankruptcy Code provides, in relevant part, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." The Bankruptcy Court held that (1) Toy Quest violated the Stay Order; (2) the violation was willful; and (3) the violation caused Aviva actual damages. Toy Quest asserts each holding was in error.

**(1) Violation of the Order**

The automatic stay, § 362(a)(3), which the Bankruptcy Court incorporated into the Stay Order, stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 541(a)(1) of the Code, in turn, defines "property of the

7

estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." Toy Quest asserts that the Bankruptcy Court erred in applying In re Chestnut, 422 F.3d 298 (5th Cir. 2005), to hold that the Dollar General funds were "arguable property" of the Debtor. In re Manley Toys, Ltd., 2018 WL 1033246 at *4 (Bankr. D.N.J. Feb. 14, 2018). Toy Quest argues before this Court, as it did before the Bankruptcy Court, that In re Jahr, 2012 WL 3205417 (B.A.P. 9th Cir. Aug. 1, 2012), which expressly rejected Chestnut's arguable property standard[3], provides the better approach.

Contrary to the parties' arguments, however, this Court need not choose between Chestnut and Jahr. The Bankruptcy Court properly held that Toy Quest violated the Stay Order by filing opposition in the garnishment action because under In re Fruehauf Trailer Corp., 444 F.3d 203, 211 (3d Cir. 2006)-- which, unlike either Chestnut or Jahr, is binding precedent on this Court-- Manley Toys had a contingent interest in the Dollar General funds.

The Third Circuit explained in Fruehauf,

> [t]he Bankruptcy Code defines property interests broadly, encompassing 'all legal or equitable interests of the debtor in property.' 11 U.S.C. § 541(a)(1). The Supreme Court has noted that '[t]he main thrust of [the Bankruptcy Code] is to secure for creditors everything

---

[3] See In re Jahr, 2012 WL 3205417 at *7 ("We decline to follow Chestnut because we are convinced that its expansive reading of the term 'property of the estate' is inconsistent with the plain language of that term's statutory definition.").

8

of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.' Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Property of the estate "'includes all interests, such as ... contingent interests and future interests, whether or not transferable by the debtor.'" In re Prudential Lines, Inc., 928 F.2d 565, 572 (2d Cir. 1991) (quoting H.R. Rep. No. 95-595, 175-76 (1978)). It is also well established that 'the mere opportunity to receive an economic benefit in the future' is property with value under the Bankruptcy Code. In re R.M.L., 92 F.3d 139, 148 (3d Cir. 1996).

444 F.3d at 211.[4] In Fruehauf, the Third Circuit held that an employer's "potential future recoupment of the surplus from its pension plan" was a property interest within the meaning of § 541(a)(1). Id.

---

[4] See also In re Kane, 628 F.3d 631, 637 (3d Cir. 2010) ("we have emphasized that Section 541(a) 'was intended to sweep broadly to include all kinds of property, including tangible or intangible property, and causes of action.'") (quoting Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 241 (3d Cir. 2001)); In re Atlantic Business and Community Corp., 901 F.2d 325, 327 (3d Cir. 1990) (observing that "the legislative history [of § 541] relates that the intended scope of this section is broad," and holding that "a possessory interest in real property is within the ambit of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay of Section 362."); In re Longview Power, LLC, 516 B.R. 282, 293 (Bankr. D. Del. 2014) ("Property of the estate includes contingent claims. . . . [I]f [insurance] coverage is found, the assets of the Debtor's estate could potentially increase, affecting a plan of reorganization."); see generally 4 Norton Bankr. L. & Prac. 3d § 61:4 ("Code § 541(a)(1) includes every conceivable interest of the debtor in the estate; all forms of property whether tangible or intangible, personal or real, contingent or fixed, causes of action, leasehold interests, or possessory interests are encompassed.").

Guided by <u>Fruehauf</u>, this Court holds that Manley Toys' interest in the Dollar General funds is a property interest within the broad scope of § 541. It was a property interest contingent upon the Tennessee District Court ruling either that Toy Quest is a trade name of Manley Toys or an alter ego of Manley Toys. Accordingly, the Court also holds that the Bankruptcy Court did not err in concluding that "the Stay Order applied to the Funds, and Toy Quest violated the stay by attempting to obtain possession [of those Funds] without first seeking relief from the Stay Order from this Court." <u>In re Manley Toys Ltd.</u>, 2018 WL 1033426 at *4.

Toy Quest further argues that even if, as this Court has now ruled, the Stay Order originally applied to the garnishment action by incorporating the automatic stay of § 362, paragraph 2 of the Stay Order, as modified on October 25, 2016, lifted the stay as to all actions not involving the Debtor. According to Toy Quest, the stay did not apply to its own actions to intervene in the garnishment action to assert its claim to the Dollar General funds. The Court disagrees for two reasons.

First, Toy Quest's argument relies solely on the first portion of paragraph 2 while ignoring the important "except that" portion. The entire paragraph provides,

> 2. The provisional stay entered by this Court on March 24, 2016 and set forth in the Court's April 1, 2016 Order Granting Provisional Relief and Setting Date for Further Hearing (the "Provisional Stay") does not apply to any

> actions taken with respect to persons or entities other than Debtor Manley Toys Limited ("Manley"), <u>except that</u>, as set forth below, the Court reserves judgment on whether the assertion of non-independent claims such as alter ego or fraudulent transfer claims against such persons or entities is subject to the Provisional Stay, and, if so, whether cause exists to lift the Provisional Stay as to such claims.

The second part of paragraph 2 states that the stay is <u>not</u> lifted as to "persons or entities other than Debtor Manley Toys Limited"-- in this case Toy Quest-- with respect to "claims such as alter ego or fraudulent transfer claims." The garnishment action involved Aviva's claims that Toy Quest is the alter ego of Manley Toys and that Toy Quest was the recipient of a fraudulent transfer, and Toy Quest's opposition directly disputed those assertions and sought possession of funds that may belong to the Debtor. Therefore, the modified Stay Order, by its plain language, applied.[5]

---

[5] Toy Quest spends many pages of its briefs arguing that "the Bankruptcy Court's 'trade name' distinction was wrong." [Opening Brief, p. 18-22; Reply Brief, p. 13] The Court need not address this argument because even if the stay violation inquiry is limited to the alter ego and fraudulent transfer claims, the Bankruptcy Court properly concluded that Toy Quest violated the stay. Alternatively, to the extent that Bankruptcy Court found as fact that Aviva asserted two different legal theories in the garnishment action, that finding was not clearly erroneous. The record evidence supported this finding. First, Aviva's application for a writ of execution in the garnishment action asserted that "Manley does business in the United States under the trade name Toy Quest Ltd." [Bankr. Docket 16-15374, Doc. 235-2] Second, Aviva's Motion for Judgment in the garnishment action contained two distinct argument headings-- one asserting the trade name theory of recovery, and another alternatively asserting an alter ego / fraudulent transfer theory. [Bankr. Docket 16-15374, Doc. 196 Ex. A] That overlapping facts may be

Second, to accept Toy Quest's argument would be to ignore the context in which the Bankruptcy Court issued the modified Stay Order. The modified Stay Order was issued in response to Aviva's application for relief from the Stay Order, so as to pursue, among other things, "alter ego, fraudulent transfer, or other claims against Toy Quest Ltd. or other nondebtor affiliates or agents of Manley and Toy Quest Ltd." [Bankr. Docket 16-15374, Doc. 144-1]  To interpret the Stay Order as allowing Toy Quest to defend against "alter ego, fraudulent transfer, or other claims," when Aviva's application to prosecute such claims had <u>not</u> been granted, would be illogical and unfair, as the Bankruptcy Court noted.  See <u>In re Manley Toys Ltd.</u>, 2018 WL 1033426 at *7 ("the Court notes that to adopt Toy Quest's argument would result in an inequity in which Toy Quest would be permitted to present its argument in the garnishment action in an attempt to recover the Funds, but Aviva would be stayed from presenting its argument (in the same case) that the Funds belong to the Debtor.").

### (2) Willfulness

Toy Quest argues that the Bankruptcy Court erred in finding that the stay violation was willful because, Toy Quest asserts, its "interpretation [of the Stay Order] was objectively reasonable." [Opening Brief, p. 23-25; Reply Brief, p. 14-15]

---

relevant to both theories does not, as Toy Quest asserts, render the two theories one in the same.

This argument misstates the legal standard. Willfulness, in the context of a § 362(k)(1) claim, is not tantamount to a specific intent to disobey a court order. As the Bankruptcy Court correctly stated, "[a] violation of the stay is 'willful' under section 362(k) 'upon a finding that the defendant knew of the automatic stay and that the defendants' actions which violated the stay were intentional.'" In re Manley Toys Ltd., 2018 WL 1033426 at *3 (quoting In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990)).[6] It is undisputed that Toy Quest knew of the automatic stay-- indeed, Toy Quest repeatedly emphasizes that it volunteered such information to the Tennessee District Court[7]-- and that Toy Quest intentionally filed opposition in the garnishment action. Therefore, the Bankruptcy

---

[6] See also In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992) ("Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.")(citing In re University Medical Center, 973 F.2d 1065, 1087-88 (3d Cir. 1992)).

[7] In this Court's view, the fact that Toy Quest advised the Tennessee District Court that the Stay Orders may apply undermines, rather than supports, Toy Quest's argument. If Toy Quest made a reasoned decision that the issue should be raised with the Tennessee District Court, this Court questions why that same line of reasoning did not lead Toy Quest to ask the Bankruptcy Court for clarification of the Stay Order. Even if, as Toy Quest asserts, the Tennessee Court "has concurrent jurisdiction to interpret the stay" [Reply Brief, p. 10] (an issue this Court does not decide) this Court questions why-- if there was, indeed, a *bona fide* question as to the scope of the stay-- Toy Quest elected not to ask the Bankruptcy Court what the Court meant in its own order.

Court did not err in holding that Toy Quest willfully violated the stay.

### (3) Actual Damages

The Bankruptcy Court held that the attorneys fees Aviva incurred in prosecuting the sanctions motion-- in effect enforcing the stay that the Bankruptcy Court imposed-- is sufficient to establish the actual damages element of a stay violation. Specifically, the Bankruptcy Court explained,

> "actual damages in the form of attorneys' fees are appropriate, despite the fact that there may not have been other compensable harm ...." In re Rodriguez, 2012 WL 589553, at *4 (Bankr. D.N.J. Feb. 22, 2012). The rationale for this is that the complaining party has been forced to take action to protect the property before it is removed by the offending party. Further, as noted in In re Thompson, 426 B.R. 759, 765 (Bankr. N.D. Ill. 2010), "§ 362(k) is not a typical fee-shifting statute, but rather provides for recovery of damages including attorneys' fees, not damages and attorneys' fees." Rodriguez, 2012 WL 589553, at *5 (citing Thompson, 426 B.R. at 765) (emphasis original). "Thus, attorneys' fees under § 362(k) are an element of damages when a party seeks to remedy an automatic stay violation." Id. (citing In re Butts, 350 B.R. 12, 24 n, 12 (Bankr. E.D. Pa. 2006)).

In re Manley Toys Ltd., 2018 WL 1033426 at *8.

On appeal, Toy Quest unsuccessfully attempts to distinguish Rodriguez, arguing that, whereas Rodriguez involved "a creditor's collection efforts or other ongoing conduct that violated the stay" [Reply Brief, p. 21], in this case Aviva "was the only one with a pending motion in the Tennessee District Court seeking to collect the Funds. All [Aviva] had to do to stop any perceived

14

or potential stay violation was withdraw its own motion." [Id., p. 21-22] The Court is unpersuaded. Aviva filed its motion before the petition date. After the petition date, and after the stay had been imposed, Toy Quest violated the stay by seeking to obtain money in which the Debtor had a contingent interest. To allow Toy Quest to escape sanctions simply because its attempt to obtain the disputed funds was unsuccessful would be to completely undermine the purpose of the automatic stay, which exists for the benefit of debtors and creditors alike. See In re Atlantic Business and Community Corp., 901 F.2d at 327 (quoting the legislative history of § 362).[8]

Further, Toy Quest's argument that Aviva "did not make any *serious* attempt to mitigate" its damages [Reply Brief, p. 21, emphasis added] is not supported by the record. As the Bankruptcy Court found, "Aviva attempted to mitigate its damages

---

[8] In a related argument, Toy Quest asserts that Aviva lacks standing to seek sanctions for violation of the stay. The Bankruptcy Court properly rejected this argument. To the extent creditors are beneficiaries of the automatic stay, they have standing to assert violations of that stay. In re Manley Toys Ltd., 2018 WL 1033426, at *7 (quoting St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 543 (5th Cir. 2009) ("Accordingly, we hold debtors and creditors are entities whose grievances fall 'within the zone of interests' protected by § 362(k).")); see also In re Peeples, 880 F.3d 1207, 1216 (10th Cir. 2018) ("§ 362(k) creates a cause of action for debtors and creditors. As the Fifth Circuit explained, the automatic stay's specific purposes are to protect the debtor from collection efforts and to protect creditors from inequitable treatment. So § 362(k)'s zone of interests extends to debtors and creditors when they allege those types of harms.") (citing St. Paul Marine & Fire Ins., 579 F.3d at 540).

by demanding that Toy Quest cease its conduct and withdraw its Limited Opposition.  Toy Quest refused to do so, instead moving forward with efforts to collect the Funds." In re Manley Toys Ltd., 2018 WL 1033426 at *8.  Perhaps most troubling to this Court, Toy Quest-- which does not dispute these facts-- argues that Aviva was required to do more.  Specifically, Toy Quest suggests that Aviva should have attempted to further "discuss" and "negotiate" with Toy Quest.  [Reply Brief, p. 21]  It is a disingenuous position.  The Bankruptcy Court found that Toy Quest refused to withdraw its opposition, effectively rejecting Aviva's demand to do so.  After that time, Aviva was not required to further pursue a "discussion" with Toy Quest, and failing to do so did not forfeit Aviva's entitlement to reasonable attorneys fees under § 362(k)(1).

Accordingly, the Court will affirm the Bankruptcy Court's Sanctions Order.

**B.**

Aviva appeals only the portion of the Bankruptcy Court's decision denying fees and costs incurred for discovery-related tasks.  As to this issue, the Bankruptcy Court explained,

> [t]he Fee Application states that Aviva spent $153,357 in legal fees, and $19,713.01 in costs related to discovery in the Sanctions Motion.
>
> Aviva's discovery was not reasonably necessary to establish its claim. To begin, Toy Quest stipulated to all relevant facts, indeed, Aviva established that the stay was violated simply by submitting the Limited

16

Response filed by Toy Quest. Further, Toy Quest's belief or motivations in filing the Limited Response were irrelevant. See generally, Atl. Bus., 901 F.2d at 329. Thus, no additional facts regarding Toy Quest's actions or intent were needed for Aviva to establish its case and prevail on the Sanctions Motion.

While the Court did find that Aviva was entitled to this discovery, because Aviva established that it could lead to relevant evidence, the fact that Aviva was entitled to discovery does not make that discovery reasonably necessary for the successful prosecution of the Sanctions Motion. Indeed, Aviva's Counsel acknowledged this at the Discovery Hearing stating "We can win this ... contested matter without any discovery, so it's not necessary." Discovery Hrg. at 2:39:00. Aviva's Counsel repeated this a moment later, explaining further that "What we meant was, this isn't necessary... But it would not be fair to force us to go forward in a contested matter where we don't get to take discovery to their defenses." Id. at 2:40:00. Moreover, none of the discovery requested by Aviva was relevant to the determination of the Sanctions Motion. Instead, the determination was based on the fact that Toy Quest was aware of the stay, and filed the Limited Response in an attempt to obtain property that may have belonged to the Debtor. As such, Aviva's arguments regarding Toy Quest's inconsistent or non-responsive discovery responses need not be addressed, as the Court has found that the underlying Discovery requests were not reasonably necessary, any time or fees attributable to the Discovery is also unnecessary.

Because the Court finds that the extensive discovery and related litigation were not reasonably necessary, the related fees and costs are not part of the actual damages suffered by Aviva in its attempt to enforce the stay. Therefore, the related fees and costs are not damages that could be awarded to Aviva.

In re Manley Toys Ltd., 2018 WL 3213710, at *3-4 (Bankr. D.N.J. June 21, 2018).

The Court easily concludes that the Bankruptcy Court did not abuse its discretion in denying the discovery fees and costs. As

17

the Bankruptcy Court properly held, as a matter of law, the discovery as to Toy Quest's intent was irrelevant, as "willfulness" in the context of a stay violation only requires intent to do the act which violates the stay.  Aviva argues that it "did not know when it took discovery that the bankruptcy court eventually was going to agree with Aviva on the legal standards applicable to stay-violation motions." [Appeal Brief, p. 59] This is a specious argument.  Controlling Third Circuit precedent-- In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990)[9]-- clearly stated the applicable legal standard. In the Bankruptcy Court, Toy Quest did not directly challenge that standard; rather, it simply relied on persuasive authority that pre-dated Atlantic Business.[10]  Aviva points to no record evidence-- and this Court has found none-- which might somehow

---

[9] See also In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992) ("Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.")(citing In re University Medical Center, 973 F.2d 1065, 1087-88 (3d Cir. 1992)).

[10] See Bankr. Docket No. 16-15374, Doc. 235, p. 10, quoting In re Adams, 106 B.R. 811, 831 (Bankr. D.N.J. 1989), for the willfulness standard.  In contrast, Aviva cited In re Lansdale Family Restaurants, Inc., 977 F.2d 826 (3d Cir. 1992) and In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990). [Bankr. Docket No. 16-15374, Doc. 196-1, p. 13-14]  Quite notably, Aviva quoted Atlantic Business for the proposition that "whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'wilfull' or whether compensation must be awarded." [Id.; emphasis added by this Court]

suggest that the Bankruptcy Court would have had any reason to depart from controlling precedent. Thus, the fees and costs incurred by a party because that party believes-- incredibly-- that a court will refuse to follow controlling precedent are not only unreasonable, but an affront to any judicial officer sworn to uphold the judicial hierarchy established by our Constitution.

Moreover, on appeal Aviva almost completely ignores its concession on the record during the Bankruptcy Court's discovery hearing that the discovery it sought was not necessary to the stay violation issue.[11] Relegated to a single footnote in its opening brief, Aviva attempts to explain its statements to the Bankruptcy Court by stating that "Aviva's counsel did not mean that Aviva did not need to investigate Toy Quest Ltd.'s factual assertions about its alleged ownership of the Dollar General Funds and its supposed innocent intent in seeking turnover of those funds." [D.N.J. Dkt. 18-2923, Doc. 24, p. 30 n.5) Assuming *arguendo* that the Bankruptcy Court misunderstood what counsel intended to convey during the hearing, Aviva's explanation does not advance Aviva's appeal. As to the intent portion, the Court has already explained why discovery was unnecessary and

---

[11] Such discovery may have been relevant to the merits of the garnishment action, but that was not the issue before the Bankruptcy Court, nor is it the issue before this Court on appeal. The discrete issue before the Bankruptcy Court, and this Court, was / is the actual damages Aviva suffered as a result of the stay violation.

unreasonable. Similarly, as to the merits of the garnishment action, those issues were not directly implicated by the stay violation motion[12], and therefore fees incurred in litigating those issues were not actual damages resulting from the stay violation.

Accordingly, the Court holds that the Bankruptcy Court did not abuse its discretion in denying attorneys fees and costs associated with discovery.

**IV. CONCLUSION**

For the foregoing reasons, the Court will affirm both orders of the Bankruptcy Court. An appropriate Order shall issue on this date.

Dated: July 17, 2019                     s/ Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE

---

[12] Aviva repeatedly states that the merits of the garnishment action were at issue in the sanctions motion. They were not. As set forth above in Section III., A., three elements of the stay violation were before the Bankruptcy Court: (1) a violation; (2) willfulness and (3) actual damages. The Court's discussion of these elements demonstrates their conceptual independence from the merits of the garnishment action.

20